# In the United States Court of Federal Claims

### No. 17-824C
### (Bid Protest)
### (Filed: October 31, 2017)

* * * * * * * * * * * * * * * * * * * * * * * * * * * *

**LOOMACRES, INC.,**

        **Plaintiff,**

        **v.**

**THE UNITED STATES,**

        **Defendant.**

* * * * * * * * * * * * * * * * * * * * * * * * * * *

**Bid Protest; Standing to Challenge Insourcing Decision; Interested Party.**

<u>Melody D. Westfall</u>, Scalfone Law PLLC, 247 W. Fayette St., Ste 203, Syracuse, NY 13202, for Plaintiff.

<u>Chad A. Readler</u>, <u>Robert E. Kirschman, Jr.</u>, <u>Douglas K. Mickle</u>, <u>Mee Geu Oh</u>, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480 Ben Franklin Station, Washington, D.C. 20044, for Defendant. <u>Erika L. Whelan Retta</u>, Air Force Legal Operations Agency, Commercial Law and Litigation Directorate, 1500 W. Perimeter Road, Suite 1780, Joint Base Andrews, MD 20762, of Counsel.

_____

### OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS
_____

**<u>WILLIAMS</u>**, Judge.

This matter comes before the Court on Defendant's motion to dismiss Plaintiff's bid protest for lack of standing. On June 19, 2017, Plaintiff, Loomacres, Inc. ("Loomacres"), filed this action challenging the decision of the United States Air Force ("Air Force") to insource Bird Aircraft Strike Hazard ("BASH") program-related services for the Cannon Airforce Base in Cannon, New Mexico. Compl. 1. Plaintiff alleges that in insourcing these services, the Air Force violated the Competition in Contracting Act of 1988 (CICA), 10 U.S.C. § 2304, the Federal Acquisition Regulation (FAR), 48 C.F.R. 6.303–2, and the Economy Act of 1933, 31 U.S.C. § 1535, "by failing to publish its Determinations and Findings necessary to authorize the use of non-competitive procedures." <u>Id</u>. at 19. Plaintiff asks the Court to order the Air Force to terminate the contract between the Air Force and the United States Department of Agriculture ("USDA"), Animal &

Plant Health Inspection Service ("APHIS"), Wildlife Services ("WS") for BASH program-related services and to procure these services utilizing competitive procurement procedures. Id. at 19-20.

In its motion to dismiss, Defendant argues that that because Plaintiff lacked an existing contract to provide BASH program-related services at the time it filed suit, Plaintiff has no direct economic interest in the outcome of the case, and thus lacks standing. Because Plaintiff is a prospective bidder with a direct economic interest in the agency's failure to compete this requirement, Defendant's motion is denied.[1]

## **Background**[2]

Loomacres is a corporation that provides airfields with wildlife hazard management, research, consulting, and operational, and technical assistance. On September 30, 2014, the Air Force awarded Loomacres a contract to provide Cannon Airforce Base in Cannon, New Mexico, with BASH program-related services. That contract was later extended and expired by its own terms on December 29, 2016.

Prior to the expiration of Loomacres' contract, during the summer of 2016, the Air Force entered into an Interagency Agreement with USDA APHIS WS to perform BASH program-related services for Cannon Air Force Base. As of September 8, 2016, Plaintiff was aware of the Air Force's decision to insource. DA 138.[3] On September 20, 2016, the Air Force entered into a contract with USDA APHIS WS for the provision of BASH program-related services at Cannon Air Force Base. USDA APHIS WS has been providing BASH program-related services since the expiration of Plaintiff's contract using one biologist detailed for a term of one year, subject to annual renewal. This biologist completed his initial term on September 30, 2017, and his detail was renewed for a second one-year term. Tr. 14, 20-21.

Plaintiff filed a protest with the Government Accountability Office ("GAO") on October 14, 2016, and on January 18, 2017, GAO dismissed Plaintiff's as untimely and determined that Plaintiff failed to establish how any particular action or inaction by the Air Force constituted a violation of the procurement requirements or procurement-related statutes and regulations. DA 136-37. Plaintiff filed the instant action on June 19, 2017.

## **Discussion**

Defendant argues that Plaintiff has no "direct economic interest" in the outcome of the case because Plaintiff lacks an existing contract to provide BASH program-related services and any relief the Court could afford Plaintiff would be speculative.[4]

---

[1]     This opinion memorializes an oral ruling issued on October 18, 2017. Tr. 26.

[2]     This background is derived from Plaintiff's complaint and the appendix to Defendant's motion to dismiss.

[3]     "DA" refers to the appendix to Defendant's motion to dismiss.

[4]     In the instant case the Government did not dispute that the insourcing "involve[s] a connection with any stage of the federal contracting acquisition process." Pl.'s Opp'n 8. As the

Under 28 U.S.C. § 1491(b)(1), the Court of Federal Claims is authorized

to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a Federal procurement or proposed procurement.

"To qualify as an "interested party," a protestor must establish that: (1) it was an actual or prospective bidder or offeror, and (2) it had a direct economic interest in the procurement or proposed procurement." Distrib. Sols., Inc. v. United States, 539 F.3d 1340, 1344 (Fed. Cir. 2008); see Rex Serv. Corp. v. United States, 448 F.3d 1305, 1307 (Fed. Cir. 2006); Myers Investigative & Sec. Servs., Inc. v. United States, 275 F.3d 1366, 1370 (Fed. Cir. 2002) ("In bid protests under the Tucker Act, 'we ... construe the term 'interested party' in section 1491(b)(1) in accordance with the [standing requirements of the] CICA and hold that standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.'") (quoting Am. Fed'n of Gov't Emps., AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2001).

The Federal Circuit has not yet addressed the precise issue of a prospective bidder's standing to challenge an insourcing decision. Triad Logistics Servs. Corp. v. United States, No. 11-43C, 2012 WL 5187846, at *10 (Fed. Cl. Feb. 29, 2012). However, in an analogous circumstance, the United States Court of Appeals for the Federal Circuit in Distributed Solutions found that prospective bidders deprived of the opportunity to compete were interested parties with standing to challenge the Government's action. See Distrib. Sols., 539 F.3d at 1344-45. In Distributed Solutions, the plaintiffs, software vendors, contested "the government's decision to task [one of its current contractors] with awarding subcontracts for the purchase of software instead of procuring the software itself through a direct competitive process." Id. The Federal Circuit found that the plaintiffs were "not mere 'disappointed subcontractors'" but were "prospective bidders [that had] submitted qualifying proposals in response [to the government's Request for Information ("RFI"] and . . . were prepared to submit bids pursuant to the anticipated Request for Quotation[s] ("RFQ") or Request for Proposal[s] ("RFP") that typically ensues after an RFI is issued." Id. at 1344-45. The Distributed Solutions plaintiffs "possess[ed] a direct economic interest in the government action at issue in that they were both deprived of the opportunity to compete . . ." Id. at 1345.

In a similar vein, in Savantage Financial Services, Inc. v. United States, the Court of Federal Claims held that to establish a direct economic interest in a procurement a "plaintiff must demonstrate that it could have competed for the contract had there been a competition." 123 Fed. Cl. 7, 32 (2015), aff'd, 668 F. App'x 366 (Fed. Cir. 2016); see Myers, 275 F.3d at 1370-71. Specifically, to be considered a prospective offeror, a plaintiff must demonstrate that it was

_____

Federal Circuit in Distributed Solutions recognized, the phrase "in connection with a procurement or proposed procurement" should be construed broadly. The Court there explained that the phrase "by definition involves a connection with any stage of the federal contracting acquisition process, including 'the process for determining a need for property or services.'" Distrib. Sols., Inc. v. United States, 539 F.3d 1340, 1346 (Fed. Cir. 2008); see Dellew Corp. v. United States, 108 Fed. Cl. 357, 370 (2012).

qualified to provide the services at issue, and that it would have submitted an offer had there been a competition. Savantage, 123 Fed. Cl. at 32; see Myers, 275 F.3d at 1370-71. Here, Plaintiff has met these requirements as it had previously competed for and won a contract to provide BASH program-related services to Cannon Airforce Base, had provided those services for over two years, and was poised to offer and provide these same services following the expiration of its contract. Here, as in Savantage, "protestors who have been deprived of the opportunity to compete for the provision of specified products or services and who allege the loss of 'significant business opportunities' as a result of the decision to forgo competition have established a direct economic interest in the proposed procurement." 123 Fed. Cl. at 32-33.

This Court recognizes that the Court of Federal Claims found that plaintiffs challenging insourcing decisions lacked standing in Triad Logistics Services Corp, 2012 WL 5187846, at *26 and Elmendorf Support Services Joint Venture v. United States, No. 12-346C, 2012 WL 3932774, at *2 (Fed. Cl. Sept. 10, 2012) ("Elmendorf II"). In both Triad and Elmendorf II, the Court emphasized the difficulty of fashioning a remedy, but that impediment does not appear to be present here. In Triad, the court noted that "[t]he Air Force [could not] easily reverse the in-sourcing decision which . . . resulted in agency personnel performing the [vehicle operations and maintenance services] that previously had been performed by [plaintiff] . . ." Triad, 2012 WL 5187846, at *21. In Elmendorf II, the court was "guided by the fact that the only remedy sought by plaintiff [was] a permanent injunction" and reasoned that "an injunction against Air Force performance would inevitably be more disruptive of [base supply] services, more disruptive to the lives of individuals, and cause more waste." Elmendorf, 2012 WL 3932774, at *3. The Court stated that "[u]nder no circumstances would we enter an injunction now that the Air Force has completely absorbed the work itself." Id.

Here, there is a single detailee performing the services at issue on a year-to-year basis. Based on the truncated record at this juncture, it would seem that such an arrangement could, if warranted, be terminated subject to the detail's terms and conditions. Assuming Plaintiff could prove that the insourcing decision was a prejudicial violation of statute or regulation or lacked a rational basis, the Court could order the relief Plaintiff seeks without disruption of the services. Whether the ensuing harm to the detailee, the USDA, the Air Force, and the public interest would outweigh the harm to Plaintiff properly awaits further development of the record. In general, the fact that an insourcing decision may be difficult to unravel is a pragmatic consideration to be weighed in determining the propriety of fashioning injunctive relief, not an issue of whether, as a threshold matter, a protestor is an interested party able to challenge that decision.

Defendant further argues that Plaintiff must have an existing contract to have standing to challenge an agency's decision to insource a requirement, relying on Triad and Elmendorf II. In Triad, the Court of Federal Claims held that the plaintiff lacked standing to challenge an agency's decision to insource a requirement because the plaintiff did not have an existing contract with the Government at the time the complaint was filed. Triad, 2012 WL 5187846, at *26. Similarly, in Elmendorf II, the Court of Federal Claims held that the plaintiff lacked standing to challenge an agency's decision to insource a requirement because, though the plaintiff had an existing contract with the government at the time the complaint was filed, the contract later expired, "eliminat[ing] that contractual 'hook' between plaintiff and the work being performed in-house." Elmendorf, 2012 WL 3932774, at *2. However, nothing in the Tucker Act requires that a plaintiff possess a current contract to challenge an agency's decision to use a noncompetitive process to acquire

services or goods.  The passage of time between the expiration of a plaintiff's contract and its protest of an insourcing decision does not divest the plaintiff of the hallmarks of its prospective bidder status.  Rather, a prospective bidder's delay in challenging a procurement decision is a factor to be weighed in determining the propriety of injunctive relief.  For purposes of standing, a plaintiff that performed the exact services being insourced and would have bid on the requirement for those same services, would retain its prospective bidder status after its incumbent contract ended.

### Conclusion

Defendant's motion to dismiss this action is **DENIED**.


 s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**