# In the United States Court of Federal Claims

No. 17-824C
(Bid Protest)
(Filed: February 21, 2018)[1]

```
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
                                        *
LOOMACRES, INC.,                        *    Bid    Protest;    In-Sourcing
                                        *    Decision; Sikes Act, 16 U.S.C.
            Plaintiff,                  *    § 670a; OMB Circular A-76;
                                        *    Statutory Construction.
      v.                                *
                                        *
THE UNITED STATES,                      *
                                        *
            Defendant.                  *
                                        *
* * * * * * * * * * * * * * * * * * * * * * * * * * * *
```

Melody D. Westfall, Scalfone Law PLLC, 247 W. Fayette St., Suite 203, Syracuse, NY 13202, for Plaintiff.

Chad A. Readler, Robert E. Kirschman, Jr., Douglas K. Mickle, Meen Geu Oh, U.S. Department of Justice, Civil Division, Commercial Litigation Branch, P.O. Box 480, Ben Franklin Station, Washington, D.C. 20044, for Defendant. Erika L. Whelan Retta, Air Force Legal Operations Agency, Commercial Law and Litigation Directorate, 1500 W. Perimeter Road, Suite 1780, Joint Base Andrews, MD 20762, Of Counsel.

---

## OPINION AND ORDER GRANTING DEFENDANT'S MOTION FOR JUDGMENT ON THE ADMINISTRATIVE RECORD

---

**WILLIAMS**, Judge.

This bid protest comes before the Court on the parties' cross-motions for judgment on the Administrative Record ("AR"). Plaintiff, Loomacres, Inc., challenges the decision of the United States Air Force to insource Bird/Wildlife Aircraft Strike Hazard ("BASH") program-related services for the Cannon Airforce Base ("Cannon AFB") in New Mexico. Plaintiff alleges that in

---

[1] The Court issued this opinion under seal on February 8, 2018, and directed the parties to file any proposed redactions on or before February 22, 2018. The Court publishes this Opinion indicating redactions by asterisks "[***]."

insourcing these services, the Air Force violated the Competition in Contracting Act of 1988 ("CICA"), 10 U.S.C. § 2304, the Federal Acquisition Regulation ("FAR"), 48 C.F.R. 6.303–2, the Economy Act of 1933, 31 U.S.C. § 1535, and Office of Management and Budget Circular A-76 ("OMB Circular A-76").[2]  Plaintiff asks the Court to order the Air Force to terminate the contract between the Air Force and the United States Department of Agriculture ("USDA"), Animal & Plant Health Inspection Service, Wildlife Services ("USDA-WS") and procure these BASH services utilizing competitive procurement procedures.

The Court denies the protest.  As the Sikes Act makes clear, OMB Circular A-76 does not govern procurements of services that are necessary for the implementation or enforcement of an Integrated Natural Resources Management Plan, and the Air Force was required to give priority to a Federal conservation or wildlife agency to perform such services.  16 U.S.C. § 670a(d) (2012). As Defendant argues, because the BASH services at issue were necessary for implementing the Air Force's Integrated Natural Resources Management Plan and USDA-WS was capable of performing those services, it was compelled to award that work to USDA without conducting an open competition or considering cost.

Plaintiff attempts to narrowly parse the Sikes Act, contending that Integrated Natural Resources Management Plans cannot encompass BASH programs because such Management Plans may only address resource management and conservation while BASH programs are confined to safety.  As such, in Plaintiff's view, the Air Force's Integrated Natural Resources Management Plans could not have addressed BASH programs, the Sikes Act cannot apply, and Defendant was required to conduct a full and open competition.

Plaintiff's tortured argument misinterprets the Sikes Act and ignores the fact that preventing birds and small mammals from colliding with aircraft clearly entails wildlife and/or natural resources management.  While such management may also be characterized as enhancing safety, that does not alter the fact that Integrated Natural Resources Management Plans encompass wildlife management, including birds and small mammals.  Plaintiff's suggestion that Integrated Natural Resources Management Plans cannot include BASH services aimed at preventing wildlife colliding with aircrafts, because such services must instead be pigeonholed into a separate category of "safety," fails.

Alternatively, Plaintiff posits that even if the Sikes Act applies to BASH services, the Air Force's decision to insource was improper because the agency failed to compare the cost of USDA-WS's performance with the cost of contracting with a private entity such as Loomacres.  Plaintiff's interpretation would render meaningless the Sikes Act's clear exemption of designated natural resources management procurements from OMB Circular A-76 and has no support in the statute. The Air Force properly interpreted the Sikes Act to conclude that it was not permitted to consider comparative cost in awarding this requirement to USDA-WS.

---

[2]   OMB Circular A-76 is appended to Defendant's Motion for Judgment on the Administrative Record as Exhibit 1.

**Findings of Fact**[3]

**Loomacres is Awarded a Contract to Provide BASH Services in 2014**

Loomacres is a corporation that provides airfields with wildlife hazard management, research, consulting, and operational and technical assistance. AR 3. On September 30, 2014, the Air Force awarded Loomacres a contract to provide Cannon Airforce Base in New Mexico, with BASH program-related services.[4] That contract required Loomacres to:

> provide a comprehensive "Bird/Wildlife Hazard Control" program…with focus on eliminating or minimizing wildlife hazards for safe air and ground support operations at Cannon AFB, New Mexico including but not limited to mountain lion, deer, coyotes, snakes, birds, etc.

Pl.'s Mot. Suppl. Ex. B, at 3.[5] Loomacres' contract was later extended and expired by its own terms on December 29, 2016. AR 5.

**The Air Force Considers How to Acquire These Services in 2016 and Contacts USDA**

On February 23, 2016, Cannon AFB contracting officials met to consider next steps for reprocuring BASH services after the expiration of Loomacres' contract. AR 200. Although the Air Force's Contract Specialist [\*\*\*] believed the Air Force "w[ould] have no problem obtaining sufficient competition," having identified four interested vendors, she also recognized that she needed to contact the USDA and the New Mexico Fish and Wildlife Service and "request the

---

[3] These findings of fact are derived from the AR. Additional findings of fact are in the Discussion.

[4] Defendant represented that it only awarded a contract to Loomacres in 2014, because the USDA was incapable of providing these services at the time. AR 11.

[5] Plaintiff moved the Court to supplement the Administrative Record with four documents pertaining to Plaintiff's predecessor contract—Plaintiff's proposal regarding Solicitation No. FA4855-14-R-0021; the Performance Work Statement in Solicitation No. FA4855-14-R-0021; the predecessor contract, Contract No. FA4620-14-D-A002; and Defendant's July 17, 2015 quarterly assessment of Plaintiff's performance under Contract No. FA4620-14-D-A002. The Court may only supplement the Administrative Record where "the omission of extra-record evidence precludes effective judicial review." Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1380 (Fed. Cir. 2009) (internal citation and quotation marks omitted). In this bid protest, Plaintiff challenges the United States Air Force's decision to insource work to USDA-WS without considering cost or conducting an open competition. Plaintiff seeks to rely upon its predecessor contract, its scope of work under that contract, its cost of performance, and the quality of its performance in support of its contentions that the work at issue should have been competed. These materials illuminate the nature of the work at issue and are relevant to Plaintiff's argument that BASH services are not subject to Integrated Natural Resources Management Plans covered by the Sikes Act. As such, to fully consider Plaintiff's arguments, the Court accepts these materials into the AR, as they are necessary for effective judicial review. Id.

letters stating that the requirement is not their responsibility, or that they do not have bodies to fulfill the need." AR 203.

On March 17, 2016, Daniel Sullivan, Wildlife Biologist and Chief of Air Force BASH Team HQ Air Force Safety, noticed a solicitation posted online for a BASH-related contract at Cannon AFB and questioned whether the Air Force had first pursued a proposal from the USDA prior to sending out the notice. AR 206. There followed an internal discussion among Air Force personnel regarding fulfilling this requirement, that ultimately resulted in Wildlife Biologist Sullivan instructing Contract Specialist [***] to contact the USDA and ask for a proposal as "Sikes Act is a Federal Law" and the USDA "must be given priority to conduct wildlife damage control on [the] installation." AR 207. Wildlife Biologist Sullivan stated:

> If USDA-WS is able to perform the job – it must be given to this federal agency before going out to bid[.] Government agencies do not bid, they give you a proposal and if it satisfies the PWS – they must be granted the position. Cost is no reason not to go with a federal agency when managing natural resources (wildlife is a natural resource).

Id.

The next day, June 2, 2016, Brian Archuleta, Supervisory Wildlife Biologist at USDA, presented the Air Force with a draft work plan, stating that "once the work plan is approved by Cannon and an Interagency Agreement (IA) is in place, we can put out a vacancy announcement for a certified Airport Biologist to start on or around Oct 1, 2016." AR 210. USDA's draft work plan stated that USDA-WS's overall goal would be to

> maintain a biologically-sound [Integrated Wildlife Damage Management] program to assist property owners, businesses, private citizens, and governmental agencies in resolving wildlife damage problems and conduct control activities in accordance with applicable Federal, State and local laws and regulations. Assistance may be in the form of providing technical assistance or direct control activities. Recommendations and control activities will emphasize long term solutions and incorporate the Integrated Wildlife Damage Management approach.

AR 212.

In order to accomplish this overall goal, USDA-WS agreed to provide the following services:

   (1) technical assistance through demonstration and instruction of wildlife damage prevention and/or control techniques;

   (2) wildlife identification and removal when domestic pet, property or natural resource damage is verified;

   (3) removal of wildlife displaying aggressive behavior or causing actual injury to base residents and/or employees;

   (4) nuisance wildlife removal when property damage is identified.

AR 213.

USDA's draft work statement also identified 10 specific tasks USDA-WS would perform, including:

> 3. Safely & professionally utilize approved wildlife damage management tools/equipment including firearms (including high-pressure air rifles), advanced optics, assorted snaring devices, all-terrain vehicles, leg-hold traps for the protection of endangered species and public safety, cage-type & other specialized traps, deterrent methods/devices (including pyrotechnics), Environmental Protection Agency approved toxicants (including euthanasia drugs), night vision equipment and electronic calling devices.
>
> \* \* \*
>
> 5. Identify wildlife hazards to aircraft and human safety at Cannon AFB
>
> 6. Provide integrated pest management recommendations to Cannon AFB on mitigating wildlife hazards to aircraft and human safety. WS will provide the nonlethal and lethal control of wildlife to provide the safest air operations possible. These techniques will include but not limited to trapping, hazing with pyrotechnics, and shooting of birds and mammals.
>
> 7. Conduct operational wildlife hazard management activities and wildlife surveys on at Cannon AFB to reduce avian and mammalian wildlife hazards to aircraft and human safety.
>
> 8. Provide training to Cannon AFB personnel in identifying and managing wildlife hazards at the facility. The length and frequency of training sessions will be agreed upon by WS and Cannon AFB. In addition WS will train of airport staff in hazing, wildlife identification, and bird strike notification procedures.

AR 213-14.

During the summer of 2016, the Air Force and USDA communicated regarding these BASH services, and considered "an interagency agreement versus obtaining competitive proposals." AR 273-77; see AR 257.

**Loomacres' Contract is Extended; Loomacres Challenges the Agency's Decision to Insource**

To avoid a gap in services, the Air Force modified Loomacres' contract on September 23, 2016, extending work through December 29, 2016, for a total additional cost of $24,981.10. AR 706-11.

At the culmination of its long deliberative process, the Air Force:

> concluded that the Sikes Act, Air Force Instruction (AFI) 32-7064, and Department of Defense (DOD) Instruction 4715.03 required that priority must be given to Federal and state wildlife and conservation agencies to supply a wildlife biologist to supervise the BASH program at Cannon Air Force Base (Cannon AFB) in 2016.

> That decision was grounded in the language of the Sikes Act which states, "priority shall be given to the entering into of contracts for the procurement of such implementation and enforcement services with Federal and State agencies having responsibility for the conservation or management of fish and wildlife."

Sullivan Decl. ¶ 3 (Dec. 15, 2017).[6] Accordingly, the Air Force proceeded to insource the work to USDA-WS rather than conduct a full and open competition.

On September 8, 2016, Loomacres challenged the Air Force's decision to "sole-source" the BASH contract to the USDA rather than solicit proposals from the private sector. AR 389-90. After receiving Loomacres' challenge, the Air Force concluded that BASH services "fall within the scope of the Sikes Act [16 U.S.C. § 670a(d)(2)] requirement to give 'priority' to Federal and State agencies when entering into contracts for management of wildlife." AR 439.

**The Air Force Awards the Work to USDA**

The Air Force and USDA executed an interagency agreement in December 2016, committing $111,300.01 of Air Force funds for one USDA biologist, as well as necessary equipment, for a nine-month period, from January 8, 2017, through September 30, 2017. AR 495, AR 499-515. The USDA biologist completed his initial term on September 30, 2017, and his detail was renewed for a second one-year term. Tr. 15, 20.[7]

**Procedural History**

Plaintiff filed a protest with the Government Accountability Office ("GAO") on October 14, 2016, and on January 18, 2017, GAO dismissed Plaintiff's protest as untimely and determined that Plaintiff failed to establish how any particular action or inaction by the Air Force constituted a violation of the procurement requirements or procurement-related statutes and regulations. AR 60-64.

Plaintiff filed the instant action on June 19, 2017. On August 11, 2017, Defendant moved this Court to dismiss for lack of jurisdiction. Briefing was completed on September 8, 2017, and oral argument was held on October 18, 2017. The Court denied the Government's motion orally on October 18, 2017, and issued a written opinion memorializing its decision on October 31, 2017. Loomacres, Inc. v. United States, 134 Fed. Cl. 779 (2017). Defendant filed the AR on November 29, 2017, and the parties filed cross-motions for judgment on the Administrative Record on December 19, 2017. Briefing was completed on January 16, 2018. On January 26, 2018, the Court ordered Defendant to address two issues regarding the AR, which Defendant did via the Declaration of Charles Dixon, filed on January 30, 2018.

---

[6] Mr. Sullivan's declaration succinctly states the agency's final determination and rationale, which were evidenced in numerous places throughout the AR, does not constitute extra-record material, and facilitates judicial review. As this declaration was submitted to address the harm the Air Force would incur if injunctive relief were granted, the declaration is properly part of the Court's record. See East West Inc. v. United States, 100 Fed. Cl. 53, 57 (2011).

[7] Citations to "Tr." are to the Court's October 18, 2017 oral argument regarding Defendant's Motion to Dismiss.

**Discussion**

**Jurisdiction and Standard of Review**

This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1491(b). The Court evaluates bid protests under the Administrative Procedure Act's standard of review. Bannum, Inc. v. United States, 404 F.3d 1346, 1351 (Fed. Cir. 2005) (citing Impresa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001)). This Court will not disturb an agency's procurement decision unless the Court finds that it was "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A) (2012); Adams & Assocs., Inc. v. United States, 741 F.3d 102, 105-06 (Fed. Cir. 2014). A procurement decision may be set aside if either:

> (1) the procurement official's decision lacked a rational basis; or (2) the procurement procedure involved a violation of regulation or procedure. A court evaluating a challenge on the first ground must determine whether the contracting agency provided a coherent and reasonable explanation of its exercise of discretion. When a challenge is brought on the second ground, the disappointed bidder must show a clear and prejudicial violation of applicable statutes or regulations.

Axiom Res. Mgmt., Inc. v. United States, 564 F.3d 1374, 1381 (Fed. Cir. 2009) (internal citations and quotation marks omitted). Plaintiff bears a "heavy burden" of proving lack of rational basis or violation of the law by a preponderance of the evidence. Impresa, 238 F.3d at 1333 (internal citation and quotation marks omitted).

The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., Inc. v. Ark.-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974). The Court will not overturn an agency decision "'even though it might, as an original proposition, have reached a different conclusion as to the proper administration and application of the procurement regulations'" if the Court finds a reasonable basis for the agency's action. Honeywell, Inc. v. United States, 870 F.2d 644, 648 (Fed. Cir. 1989) (quoting M. Steinthal & Co. v. Seamans, 455 F.2d 1289, 1301 (D.C. Cir. 1971)).

If this Court finds that the agency acted arbitrarily, capriciously, or contrary to law, the plaintiff must also show that it was prejudiced by this conduct to prevail. Bannum, 404 F.3d at 1351. This requires the plaintiff to demonstrate that there was a "substantial chance" the plaintiff would have received the contract award but for the Government's errors in the procurement process. Id. at 1358. Under Rule 52.1 of the Rules of the Court of Federal Claims, the parties are limited to the AR, and the Court makes findings of fact as if it were conducting a trial on a paper record. See id. at 1354.

**The Air Force Reasonably Awarded the Work to USDA-WS**

At issue is the Air Force's decision to insource BASH services from USDA instead of procuring such services using full and open competition. The Air Force determined that the Sikes Act required it to award the requirement to USDA as that Act both exempts procurements for services that implement its Integrated Natural Resources Management Plans from OMB Circular A-76, and requires granting federal agencies charged with managing natural resources—like USDA—priority in providing such services. Plaintiff claims that the Air Force's insourcing

7

decision violated the Competition in Contracting Act of 1988 ("CICA"), 10 U.S.C. § 2304, the Federal Acquisition Regulation ("FAR"), 48 C.F.R. 6.303–2, the Economy Act of 1933, 31 U.S.C. § 1535, and OMB Circular A-76, as the agency failed "to obtain full and open competition for its new BASH contract" and failed to conduct a cost-benefit analysis to support its insourcing decision.  Pl.'s Mot. 29-35.  Specifically, Plaintiff complains that the Air Force unlawfully:

> (1) determined that BASH programs were encompassed within Integrated Natural Resources Management Plans;
>
> (2) sought a proposal from USDA-WS instead of conducting a full and open competition; and
>
> (3) awarded the work to USDA-WS without considering the comparative cost of performing those same services via the private sector.

None of Plaintiff's contentions have merit.

### **The Air Force Reasonably Construed the Sikes Act to Conclude that Integrated Natural Resources Management Plans Encompass BASH Programs**

The Sikes Act provides that "[t]he Secretary of Defense shall carry out a program to provide for the conservation and rehabilitation of natural resources on military installations," and in support of that program, requires "the Secretary of each military department" to "prepare and implement an integrated management plan for each military installation" unless deemed unnecessary for a particular installation.  16 U.S.C. § 670a(a).  The statute provides a list of activities that must be addressed in each Integrated Natural Resources Management Plan, including:

> **(A)** fish and wildlife management, land management, forest management, and fish- and wildlife-oriented recreation;
>
> **(B)** fish and wildlife habitat enhancement or modifications;
>
> \*     \*     \*
>
> **(I)** no net loss in the capability of installation lands to support the military mission of the installation; and
>
> **(J)** such other activities as the Secretary of the military department determines appropriate.

§ 670a(b)(1).

The Sikes Act exempts the procurement of services necessary to implement such Integrated Natural Resources Management Plans from OMB Circular A-76 and mandates that agencies grant "priority" to acquiring such services from federal and state agencies charged with conservation or management of fish or wildlife.  The Sikes Act provides:

> With regard to the implementation and enforcement of integrated natural resources management plans agreed to under subsection (a) of this section - -

8

> **(1)** neither Office of Management and Budget Circular A-76 nor any successor circular thereto applies to the procurement of services that are necessary for that implementation and enforcement; and
>
> **(2)** priority shall be given to the entering into of contracts for the procurement of such implementation and enforcement services with Federal and State agencies having responsibility for the conservation or management of fish or wildlife.

§ 670a(d).  As set forth in the Act's legislative history, "the U.S. Fish and Wildlife Service or the appropriate state fish and wildlife agency should receive priority consideration for award of these contracts" because "conservation of these resources is best accomplished by ensuring that activities relating to fish and wildlife are undertaken by individuals with professional competence in the management of these resources."  H.R. Rep. No. 99-129, pt. 1, at 8 (1986), as reprinted in 1986 U.S.C.C.A.N. 5254, 5260.

In Air Force Instruction 32-7064, the Secretary of the Air Force determined that BASH programs were an appropriate activity to be governed by Air Force Integrated Natural Resources Management Plans, explaining that:  "[t]he installation Integrated Natural Resources Management Plan must support the BASH Plan," "must address habitat management techniques that can reduce the potential for wildlife hazards to aircraft operations," and must reference the BASH Plan.  AR 158 (AFI 32-7064 (Nov. 18, 2014), Sec. 15.1.1).[8]  Consistent with Air Force Instruction 32-7064, Cannon AFB's Integrated Natural Resources Management Plan encompasses BASH services—it sets out management strategies to address challenges regarding bird strikes at Cannon AFB, and lists "projects necessary to meet" the Plan's goals relating to migratory bird monitoring or BASH, including assessing potential bird aircraft strike hazards, outlining the policies and procedures to handle and mitigate risks and hazards associated with flight operations, and identifying procedures for reporting strikes.  AR 610-11, 616-17, 627-28.[9]

Plaintiff's principal argument is that the Air Force abused its discretion in determining that BASH programs are properly addressed in Air Force Integrated Natural Resources Management Plans, because BASH programs are solely focused on aviation safety, not resource management.  In Plaintiff's view, the Sikes Act cannot apply as a matter of law to BASH services because the Act does not encompass BASH services.  Plaintiff's reading of the Act is untenable.

BASH programs clearly implement wildlife and land management even though they also relate to safety.  See Air Force Instruction 32-7064, Sec. 15.3, "Management of Wildlife in Support of the BASH Plan," set forth in Appendix A at 16 ("Although the Air Force Safety Center is responsible for the overall AF BASH program, natural resources and pest management personnel are an integral part of every installation BASH program.").

As the Air Force succinctly explained:

---

[8]   The pertinent portion of AFI 32-7064 is set forth in Appendix A.

[9]   A description of the pertinent parts of the Air Force's Integrated Natural Resources Management Plan is set forth in Appendix B.

9

> [t]he focus of the BASH program is to prevent wildlife-related aircraft mishaps and reduce the potential for wildlife hazards to aircraft operations. Accomplishing this goal requires knowledgeable natural resources management on and adjacent to installation airfields.

AR 158. BASH programs implicate numerous categories of activities that the Sikes Act requires agencies to address in their Integrated Natural Resources Management Plans, including:

1. "fish and wildlife management, land management, [and] forest management," § 670a(b)(1)(A), as BASH programs may require killing wildlife, AR 160 ("[l]ethal control is authorized") and "[t]he land adjacent to aircraft operations areas must be managed to minimize attractions to wildlife," AR 158;

2. "fish and wildlife habitat enhancement or modifications," § 670a(b)(1)(B), as "habitat management techniques [] can reduce the potential for wildlife hazards to aircraft operations," AR 158; and

3. ensuring "no net loss in the capability of installation lands to support the military mission of the installation," § 670a(b)(1)(I), as resource "management on and adjacent to the managed airfield to support BASH Plan objectives is a military readiness activity." AR 158; see Appendix B.

The Court rejects Plaintiff's contention that the Sikes Act does not apply because BASH programs could not have been addressed in the agency's Integrated Natural Resources Management Plan.

### The Air Force Reasonably Awarded the Requirement to USDA-WS Rather than Conducting a Full and Open Competition

Plaintiff asserts that Defendant violated the Competition in Contracting Act of 1988 ("CICA"), 10 U.S.C. § 2304, and its implementing regulations, FAR 6.303–2, by seeking a proposal from USDA-WS instead of conducting a full and open competition. However, CICA does not apply "in the case of procurement procedures otherwise expressly authorized by statute . . . ." 10 U.S.C. § 2304(a)(1). Further, "the head of an agency may use procedures other than competitive procedures" if "a statute expressly authorizes or requires that the procurement be made through another agency or from a specified source[.]" § 2304(c)(5).

Here, another statute, the Sikes Act, expressly authorizes the procurement of the BASH services at issue "through another agency." The Sikes Act imposes mandatory conditions an agency must follow in implementing and enforcing its Integrated Natural Resources Management Plans. The Act exempts procurements of services necessary for the implementation of such Plans from OMB Circular A-76, which mandates a cost comparison analysis before an agency may insource work. The Sikes Act also requires that the agency give "priority" to acquiring such services from a Federal agency that is charged with managing or conserving wildlife. 16 U.S.C. § 670a(d)(2). USDA-WS is a Federal agency responsible for conservation or management of fish and wildlife, including birds. See Memorandum Of Understanding Between USDA and United

10

States Department of the Interior, Fish and Wildlife Service, located at https://www.fws.gov/migratorybirds/pdf/management/mouaphis.pdf (last visited Feb. 8, 2018).[10]

The Air Force, in accordance with the Sikes Act's mandate, gave "priority" to USDA-WS to perform services necessary to "implement[] and enforce[]" Cannon AFB's Integrated Natural Resources Management Plan. USDA-WS agreed to: "[s]afely & professionally utilize approved wildlife damage management tools/equipment," "[i]dentify wildlife hazards to aircraft and human safety at Cannon AFB," "[p]rovide integrated pest management recommendations to Cannon AFB on mitigating wildlife hazards to aircraft and human safety," [p]rovide the nonlethal and lethal control of wildlife to provide the safest air operations possible," "[c]onduct operational wildlife hazard management activities and wildlife surveys on at Cannon AFB to reduce avian and mammalian wildlife hazards to aircraft and human safety," and "[p]rovide training to Cannon AFB personnel in identifying and managing wildlife hazards at the facility." AR 502-03. Such services directly implement Cannon AFB's Integrated Natural Resources Management Plan and are covered by the Sikes Act and exempt from CICA's requirement for full and open competition. See 10 U.S.C. § 2304(a)(1), (c)(5). Accordingly, the Air Force properly awarded the work to USDA-WS.

Plaintiff further argues that the Air Force erred by failing to support its decision with a written justification and approval. While the record does not contain a formal justification and approval, the record is replete with evidence that the Air Force considered the Sikes Act in its deliberations, and ensured that an agency charged with managing wildlife was capable of providing BASH services here. See AR 203, 207, 232, 275, 277, 439. In the June 20, 2014 Sikes Act Implementing Procedures Memorandum, the Department of Defense "reminded" the Military Departments that the Sikes Act mandates that "priority shall be given to . . . Federal and State agencies having responsibility for the conservation or management of fish and wildlife" when "contracting for services to implement the provisions of an INRMP." AR 105 (emphasis in original) (internal quotation marks omitted). The Air Force's decision in this case reflects formal DoD policy, and the agency's rationale in support of its decision is clearly discernable from the record and objectively reasonable. The Court will "uphold a decision of less than ideal clarity if the agency's path may reasonably be discerned." Bowman Transp., 419 U.S. at 286. Accordingly, in the situation here, while a written decision would have been better procurement practice, its absence is not fatal. See RN Expertise, Inc. v. United States, 97 Fed. Cl. 460, 471-72 (2011) (lack of required justification not a basis to grant protest absent demonstration that if such a justification had been written there was a "substantial chance" it would have resulted in a contrary determination by the agency).

**The Air Force Reasonably Awarded the Work to USDA-WS Without Considering the Comparative Cost of A Private Contractor Performing Those Services**

In the alternative, Plaintiff contends that the Sikes Act requires the agency to consider cost when procuring services implementing its Integrated Natural Resources Management Plan. In lodging this argument, Plaintiff invokes the following provision of the Act:

---

[10] At Defendant's request, the Court takes judicial notice of this Memorandum pursuant to F.R.E. 201.

> With regard to the implementation and enforcement of integrated natural resources management plans agreed to under subsection (a) of this section—
>
> > **(1)** neither Office of Management and Budget Circular A-76 nor any successor circular thereto applies to the procurement of services that are necessary for that implementation and enforcement; and
> >
> > **(2)** priority shall be given to the entering into of contracts for the procurement of such implementation and enforcement services with Federal and State agencies having responsibility for the conservation or management of fish or wildlife.

16 U.S.C. § 670a(d). According to Plaintiff, "priority" means only that work should be awarded to a qualifying government agency if "all other things" are "relatively equal." Pl.'s Resp. 5. In Plaintiff's view, all other things were not equal here, as Plaintiff allegedly would have performed the same work at approximately two-thirds of the price, requiring that USDA-WS should not have been granted "priority." Id. Plaintiff warns that absent its interpretation of the Act, Defendant would be permitted to award a contract to another agency even if that agency "charged ten times as much as the private contractor" or "the private contractor was five times better at providing the service than the government agency." Id. at 6.

Plaintiff's argument is premised on a gloss to the statutory language that is not there. There is no requirement in the statute that an agency do a cost comparison in granting priority to a Federal agency charged with management of wildlife and land resources. In contrast, the same section of the statute that uses the term "priority" expressly exempts the agency from conducting the cost-comparison analysis required by OMB Circular A-76. 16 U.S.C. § 670a(d).[11] This exemption from OMB Circular A-76 would be meaningless if the Sikes Act could nonetheless be construed to require the agency to compare cost of its performance with that of the private sector. Accordingly, the Court rejects Plaintiff's alternative argument that the agency was required to consider comparative costs under the Sikes Act.[12]

**Loomacres is Not Entitled to Injunctive Relief**

In order to obtain a permanent injunction, a protestor must show that: (1) it has actually succeeded on the merits; (2) it will suffer irreparable harm if such relief is not granted; (3) the

---

[11] OMB Circular A-76 provides that "agencies and public reimbursable sources shall calculate cost estimates" to reflect the full cost of performance by the government. OMB Circular A-76, C-1.

[12] Plaintiff also cites the Economy Act, 31 U.S.C. § 1535, and 10 U.S.C. § 2463 as bases for its protest. Plaintiff has not established a violation of either statute. See Savantage Fin. Servs., Inc. v. United States, 123 Fed. Cl. 7, 38-39 (2015) (the Economy Act and its implementing regulations at 48 C.F.R. § 17.5 do not apply "where one executive agency [] is acquiring goods or services directly from another executive agency"). 10 U.S.C. § 2463 requires DoD to "devise and implement guidelines" to consider if it is appropriate for "[DoD] civilian employees" to perform "new functions and functions that are performed by contractors . . . ." This provision is not relevant to the situation here.

12

balance of the hardships tips in the protestor's favor; and (4) an injunction will serve the public interest.  <u>Centech Grp., Inc. v. United States</u>, 554 F.3d 1029, 1037 (Fed. Cir. 2009).  Because Loomacres' protest fails on the merits, the Court need not consider the other factors.  <u>See Sci. Applications Int'l Corp. v. United States</u>, 108 Fed. Cl. 235, 283 (Fed. Cl. 2012) ("In that [plaintiff] has not prevailed on the merits of its substantive claims, the first hurdle prerequisite to injunctive relief, inquiry is over.").  Accordingly, Loomacres' request for injunctive relief is denied.

## **<u>Conclusion</u>**

Plaintiff's motion to supplement the Administrative Record is **GRANTED**.

Defendant's motion for judgment on the Administrative Record is **GRANTED**, and Plaintiff's motion for judgment on the Administrative Record is **DENIED**.  The Clerk is directed to enter judgment on the Administrative Record in favor of Defendant.

 s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**

# Appendix A

**Air Force Instruction 32-7064**

In Air Force Instruction 32-7064, dated November 18, 2014, governing Integrated Natural Resources Management Plans for Air Force installations, the Secretary of the Air Force set forth specific activities—including BASH programs—that had to be addressed in Air Force installation Integrated Natural Resources Management Plans:

**15.1. Bird/Wildlife Aircraft Strike Hazard (BASH) Program.** The focus of the BASH program is to prevent wildlife-related aircraft mishaps and reduce the potential for wildlife hazards to aircraft operations. Accomplishing this goal requires knowledgeable natural resources management on and adjacent to installation airfields. Installation natural resources management activities must comply with the requirements of AFI 91-202, *The US Air Force Mishap Prevention Program*, AFI 91-204, *Safety Investigations and Reports*, and AFPAM 91-212, *BASH Management Techniques*. AFCEC/CO and the Air Force Safety Center (AFSEC/SEFW) provide technical assistance to installations on BASH issues. **(T-1).**

> 15.1.1. The installation Integrated Natural Resources Management Plan must support the BASH Plan. The INRMP must address habitat management techniques that can reduce the potential for wildlife hazards to aircraft operations. The BASH Plan must be referenced in the INRMP. A BASH Plan designated For Official Use Only (FOUO) is exempted from public review, but must be available to the USFWS and state wildlife agency upon request. **(T-1).**
>
> 15.1.2. Natural resources personnel will assist the installation flight safety office and others in the development and implementation of the BASH Plan. Natural resource personnel will assist the flight safety office in providing oversight to external agencies or contractors involved in the implementation of the BASH program on Air Force property. **(T-1).**
>
> 15.1.3. The installation natural resources manager must be an active member of the installation Bird/wildlife Hazard Working Group (BHWG). **(T-1).**
>
> 15.1.4. Installations will establish procedures for coordination and review of construction and infrastructure improvement projects (e.g. landscaping, waste water treatment, golf courses etc.) to ensure that any BASH related impacts are considered. **(T-1).**

**15.2. Natural Resources Management in the Airfield Environment.** All aspects of installation natural resources management must be reviewed for potential wildlife hazards to aircraft operations. The land adjacent to aircraft operations areas must be managed to minimize attractions to wildlife. Refer to Federal Aviation Administration Advisory Circular 50/5200- 33B, *Hazardous Wildlife Attractants*

> *on or Near Airports* for guidance on identifying land uses near airfields that have the potential to attract hazardous wildlife. **(T-1).**
>
> *   *   *
>
> **15.3. Management of Wildlife in Support of the BASH Plan.** The INRMP must evaluate both existing and potential wildlife hazards to aircraft operations. Although the Air Force Safety Center is responsible for the overall AF BASH program, natural resources and pest management personnel are an integral part of every installation BASH program. Natural resources managers must share information on biological resources and habitat conditions with the installation safety office to facilitate the development of a comprehensive BASH program. **(T-1).**

AR 158-59.

# Appendix B

**The Cannon AFB Integrated Natural Resources Management Plan**

The following is the Court's summary of relevant excerpts from the Cannon AFB Integrated Natural Resources Management Plan.

The Cannon AFB Integrated Natural Resources Management Plan is "a long-term planning document that guides implementation of the natural resources program to help ensure support for the installation mission, while protecting and enhancing natural resources and providing a variety of outdoor recreational opportunities for station personnel." AR 527. Pursuant to the Sikes Act, Cannon AFB's Integrated Natural Resources Management Plan was prepared "in cooperation with the Secretary of the Department of Interior, acting through the Director of the U.S. Fish and Wildlife Services (USFWS), and the New Mexico Department of Game and Fish (NMDGF)." Id.

The Integrated Natural Resources Management Plan sets out "[t]hirteen resource-specific natural resources program elements [that] have been developed to address relevant issues," and describes "[e]xisting conditions, baseline survey data, current management practices, and recommended management actions . . . ." Id. Among the "[m]anagement program elements covered in" the Integrated Natural Resources Management Plan is "Bird Aircraft Strike Hazard (BASH)." Id.

Cannon AFB's Integrated Natural Resources Management Plan defines BASH as:

> the threat of aircraft collision with birds during flight operations. Although most bird strikes do not result in aircraft damage, some strikes have led to major damage and/or serious aircraft accidents. According to Bird Strike Committee USA, bird and other wildlife (primarily mammals) strikes result in over $600 million in damage to U.S. and civilian air traffic every year. To date, more than half of the strikes are reported at low flight altitudes (<100 ft); however, strikes have occurred up to 37,000 ft (AirSafe 2009). Military aircraft used by AFSOC may be more vulnerable than other DoD aircraft because many AFSOC missions require flying at low altitudes.

AR 590.

Section 7 of Cannon AFB's Integrated Natural Resources Management Plan, which "describes the natural resources and land management programs . . . and the implementation of the INRMP[,]" explains that "[c]urrently, [Cannon] AFB has a BASH program for which the primary focus is to determine the wildlife hazards present on [Cannon] AFB and [Melrose] AFR and how to mitigate them." AR 595, 611.

Section 7.12.1 of Cannon AFB's Integrated Natural Resources Management Plan highlights particular challenges the agency faces regarding bird strikes at Cannon AFB, including aircraft take-off and landings, urban pest species, such as pigeons, dove, and blackbirds, which flock in high numbers and are susceptible to collisions, raptors, and the large prairie dog population which attracts these birds. Id.

Section 7.12.1 includes a table setting out the management strategies the agency developed for addressing the specific challenges at Cannon AFB:

| Primary Issues | Management Strategies |
|---|---|
| Bird aircraft strikes have been documented on aircraft involved in the AFSOC mission at CAFB. A new wildlife hazard management plan is needed to address and manage changes in aircraft types and flight levels associated with the new AFSOC mission. | Develop a wildlife hazard management plan for CAFB |
| A large prairie dog population within the airfield has the potential to attract foraging hawks and vultures to the airfield resulting in a potential increase in bird-aircraft strike hazard. | Evaluate current wildlife deterrent measures in use and implement new strategies where possible. |
| Prairie dogs have altered airfield habitats to benefit and potentially increase the population of ground foraging birds (killdeer, mourning doves, horned larks). | Improve bird strike reporting and data maintenance |
| Prairie dog burrows attract burrowing owls, creating another potential hazard for aircraft. | Conduct a thorough wildlife hazard assessment to determine where the highest risks occur and develop mitigation measures. |

Id.

Section 8 of Cannon AFB's Integrated Natural Resources Management Plan provides that "[t]his INRMP is focused on the achievement of nine specific goals, broken down into the natural resources elements discussion in Section 7, for the protection and improvement of the natural environment." AR 615. Goal 7 is to "Reduce Wildlife Aircraft Strike Hazards for Cannon Air Force Base and Melrose Air Force Range," and the specific objectives, along with projects to support those objectives, are listed as:

> Objective 7.1: Develop a wildlife hazard assessment for [Cannon] AFB and [Melrose] AFR.
>
> > Project 7.1.1: Conduct wildlife hazard site assessments for [Cannon] AFB and [Melrose] AFR.
> >
> > Project 7.1.2: Develop a wildlife hazard assessment report that details the results of the surveys and provides practical and proven options for mitigating wildlife hazards.
>
> Objective 7.2: Implement a wildlife hazard management plan for CAFB and MAFR.
>
> > Project 7.2.1: Develop a wildlife hazard management plan based on historic wildlife strike data, existing wildlife control, and current wildlife populations and threats.

AR 616-17.

Section 9 of Cannon AFB's Integrated Natural Resources Management Plan is titled "Implementation." AR 619. Subsection 9.1 ("Projects") provides:

> during development of this INRMP goals have been developed, natural resources management objectives defined, and legal drivers identified for [Cannon] AFB and [Melrose] AFR. A list of projects necessary to meet these goals and objectives were also developed. Detailed prescriptions including management actions, cost estimates, funding classification, and an implementation schedule are in Section 9.3. The INRMP is considered implemented if the installation:
>
> - Actively requests, receives, and uses funds for all Class 0 and Class 1 projects and activities;[13]
>
> - Ensures that sufficient numbers of professionally trained natural resources management staff are available to perform the tasks required by the INRMP;
>
> - Coordinates annually with all cooperating offices; and
>
> - Natural Resources program manger documents, in the form of ACES projects, deliverables, and during the annual review process, specific INRMP action accomplishments undertaken each year. In addition, accomplishments are documented as a part of the annual review process.

Id.

Among the "list of projects necessary to meet" the goals set out in Cannon AFB's Integrated Natural Resources Management Plan are Project Nos. 2, 7, 8, and 9, which all relate to migratory bird monitoring or BASH. Project No. 2 "proposes to continue annual breeding bird surveys on established routes on [Cannon] AFB and [Melrose] AFR in support of wildlife management." AR 622. Project No. 7 "proposes to assess both [Cannon] AFB and [Melrose] AFR for wildlife hazards as they relate to potential bird aircraft strike hazards." AR 627.

Project No. 8, to "Update/Implement a Wildlife Hazard Management Plan," requires a comprehensive plan to detail the current risks and hazards associated with flight operations, and establish procedures to handle and mitigate those risks reporting strikes. The plan can be adapted to incorporate air traffic control procedures if birds or other potential hazards are observed in the area, as well as use of AHAS or other "real-time" detection procedures. AR 628.

Project No. 9 proposes to assess the current population of black-tailed prairie dogs on Cannon AFB, and burrowing owls, a protected species, that pose a risk to aircraft operations as they attract large raptor species. AR 629. Project Nos. 7, 8, and 9 all cite the Sikes Act and provisions of AFI 32-7064 pertaining to BASH-services as their "Legal Drivers." AR 627-29.

---

[13] "Class 0" ("Recurring Natural Resources Conversation Management Requirements") and "Class 1" ("Current Compliance") projects are defined in Subsection 9.2. AR 619.